### HANNAFIN v. PELICAN CRACKER FACTORY, Inc.*
### No. 17024.

Court of Appeal of Louisiana. Orleans.
Jan. 10, 1939.

Clarence Dowling and Arthur Landry, both of New Orleans, for appellant.

*Rehearing denied Feb. 6, 1939.

Milling, Godchaux, Saal & Milling, of New Orleans, for appellee.

WESTERFIELD, Judge.

Mrs. Philomene Hannafin, divorced wife of Charles Singer, was injured on April 8th, 1936, while employed by the Pelican Cracker Factory, Inc., when a falling door struck her on her back near the base of her ·spine. She was paid compensation by her employers at the rate of $5.95 per week until November 29th, 1936, when payments were stopped. In the meanwhile, she had been treated by Drs. Bradburn, Scott, Fenno, Unsworth, Gilbert and subsequent to the cessation of payments by Drs. Miller, Simon, Hatch and finally by Dr. Battalora. With the exception of Drs. Battalora and Gilbert, all of ,these physicians treated Mrs. Hannafin on behalf of the defendant. When further compensation was refused her she was under the care of Dr. Scott, who had operated on her and removed her coccyx bone. Dr. Scott informed her that she had recovered from the effects of the· accident, but she continued to suffer pain and not being able to obtain further compensation brought suit against her employer, the Pelican Cracker Factory, Inc., on February 10, 1938, claiming four hundred weeks' compensation at the rate of $6.50 per week, less the amount already received in compensation.

Defendants filed exceptions of no right or cause of action and prescription which were referred to the merits.

There was judgment below in favor of the defendant dismissing plaintiff's demand and she has appealed.

The exceptions of no cause or right of action and prescription were based upon Section 31 of Act No. 20 of 1914, as amended by Act No. 29 of 1934, which reads as follows:

"That in case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties shall have agreed upon the payments to be made under this act or unless within one year after the accident proceedings have been begun as provided in Sections 17 and 18 of this Act. Where, however, such payments have been made in any case, said limitations shall not take effect until the expiration of one year from the time of making the last payment. Also, where the injury does·not result at the· time of, or develop immediately after the·accident, the limitations shall not take effect until the expiration of one ·year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the said proceedings have been begun within two years from the date of the accident."

In brief ·the section provides that no·suit for compensation can be brought after the expiration of one year from the date of the accident unless compensation has been agreed upon and payments made pursuant thereto, in which event the year shall begin to run from the time of making last payment, and unless the injury does not result at the time of the accident and in that event the year shall begin to run at the time the injury develops and in no event can suit be brought after two years from the date of the accident. Since this suit was brought on February 10, 1938, and compensation discontinued on· November 9th, 1936, òr more than one year later, it is clear that unless it can be ·shown that the injury complained of here did not manifest itself before February 10th, 1937, or within· one year of its discovery, the defense must prevail.

Of the numerous physicians who examined the plaintiff only three testified, Dr. Battalora on behalf of the plaintiff and Drs. Scott and Simon on behalf of the defendant. Dr. Battalora did not see the plaintiff until May 13, 1937, when he found her to be suffering with a sacro-iliac strain. There is nothing to controvert this finding of Dr. Battalora and we have no difficulty in concluding that at the time he· examined Mrs. Hannafin, she was suffering from a sacro-iliac strain. Dr. Battalora said that in his opinion the sacro-iliac strain had been caused by the accident, but could not and would not say how long it had existed.

Dr. Scott first saw Mrs. Hannafin in July, 1936, at which time "she could not sit down unless she sat .down on a pillow, and she walked, leaning to the left, with assistance." She was, he says, obviously suffering at the time from injury to the lumbosacral region of the back and to both sacro-iliac joints, as well as from an injury to the coccyx. He caused x-ray pictures to be taken of Mrs. Hannafin's back and of "both sacro-iliac joints and the coccyx". He testified that "an examination of the coccyx showed that the last two

segments had been broken off and displaced anteriorly and that they were freely movable and not united to the upper fragments of the coccyx. I read the x-ray pictures of the lumbar spine, which were taken by myself, and they were negative for injury to the lumbar spine; also the pictures of the lumbosacral and sacro-iliac were negative". As a result of Dr. Scott's examination and diagnosis he found Mrs. Hannafin to be suffering from "lumbosacral sprain and right and left sacro-iliac sprain and fracture, with displacement of the lower two segments of the coccyx." He performed an operation upon the plaintiff, removing her coccyx and instructed her to wear a "steel Taylor brace" for the relief of the "sacro-iliac and lumbosacral strain." Mrs. Hannafin wore this brace from August 22nd, 1936, to September 16, 1936, when she complained that it was uncomfortable and a sacro-iliac belt was substituted. He continued to treat Mrs. Hannafin until November 29th, 1936. In the meanwhile, he sent her to Drs. Fenno and Unsworth, specialists in nervous disorders; to Drs. Hatch and Simon, orthopedic specialists, and to Dr. Miller, a gynecologist. All of these physicians gave negative reports concerning Mrs. Hannafin in respect to their particular specialties.

In December, 1936, plaintiff, with her attorney, Mr. Arthur Landry, met Dr. Scott and Mr. Stapp, a representative of defendant's insurance company, in Dr. Scott's office and attempted to agree upon a doctor whose opinion might be obtained concerning the injury which Mrs. Hannafin contended had not been cured and which Dr. Scott believed otherwise, in order that the opinion of this medical arbitrator might be final. Several doctors were considered and one agreed upon, but the plan fell through because of a misunderstanding concerning the continuance of the payments in compensation, plaintiff's counsel taking the position that it was useless to go further if the compensation payments were withheld. At this meeting or at a subsequent one, according to the testimony of Dr. Scott and of Mr. Landry, all of the reports upon the plaintiff's condition by the various doctors who had examined her and which had been submitted to Dr. Scott, including his own findings, were shown to Mr. Landry.

Dr. Simon, who examined the plaintiff at Dr. Scott's request on November 30th, 1936, found that she presented no evidence of a sacro-iliac strain at that time and that she had no "orthopedic disability". He also testified that "she gave me no complaint at the time of my examination that she was in any way suffering with sacro-iliac strain. She centered her entire disability on the sacrum, that is, the lower portion of the sacrum, the coccyx".

Counsel for plaintiff contends that his client was misled by the statements of defendant's physicians to the effect that in November, 1936, she had been cured of all injuries resulting from the accident, and that the pain and suffering which she was still enduring would gradually diminish and finally cease after resumption of her normal activities, and that in consequence of this advice she ceased all efforts to obtain further compensation until May 5, 1937, when, through Dr. Battalora's examination, she discovered on her own initiative, that she was suffering from a sacro-iliac strain, a fact of which she had no previous knowledge and that, therefore, the prescriptive period set forth in the quoted section of the compensation act does not begin to run until that time.

We are convinced that Mrs. Hannafin suffered more or less from the time of her injury up to the time of the filing of her suit and is, perhaps, still suffering, but we are also convinced that whatever might have been the cause of her suffering it was due either to the fractured coccyx bone or the sacro-iliac strain, both of which injuries were manifest immediately after the accident. We find no evidence of any intentional deception on the part of the defendant. On the contrary, a rather unusual effort is shown to have been made to discover and relieve the plaintiff of the effects of the injuries from which she suffered. This is indicated by the fact that she was sent to so many specialists in order to obtain their opinion in a field apparently unrelated to that involved in the accident. The evidence of Dr. Battalora is to the effect that professional opinions might easily differ as to the presence of a sacro-iliac strain. When this is understood the apparent conflict between the medical findings of the numerous physicians who examined plaintiff may be reconciled upon grounds wholly consistent with absolute sincerity of all concerned. Be that as it may, the section of the compensation law upon which the defense is based prohibits the bringing of a

suit more than one year after the discovery of the disability due to the accident, in this case the sacro-iliac strain. Under the evidence in the record it cannot be said that the sacro-iliac strain did not manifest itself until within one year before the suit was filed. See Lewis v. Texas Company, 169 So. 181, Court of Appeal for the Second Circuit.

For the reasons assigned the judgment appealed from is affirmed.

Affirmed.