This is a suit for total disability under the compensation law. Whitney Esthey, a welder, brought suit against his employer, the Avondale Marine Ways, Inc., for $20 per week for a period of 400 weeks, plus $250, for medical expenses subject to a credit of certain payments admittedly received by him.
The defendant filed a plea of prescription which was referred to the merits. It then answered, admitting that the plaintiff was injured as alleged, but denied that he was totally disabled and averred that all compensation due him had been paid.
There was judgment below as prayed for with the exception of the medical expenses which were disallowed. The defendant alone has appealed.
Whitney Esthey, an employee of the Avondale Marine Ways, Inc., was injured on the 2d of April, 1943, when he was struck on the forehead by a welding estancheon, which caused a fracture of his right frontal sinus. He was treated by the defendant's first aid department and by Dr. Neibergall, defendant's physician, at his office. He was thereafter ordered to the Baptist Hospital in the City of New Orleans, where he remained about six days. Thereafter he visited Dr. Neibergall periodically until the 14th of May, 1943, when he returned to his employment. He worked only a few hours, became dizzy and fainted and was sent home where he remained in bed another week. On the 24th of May, he went back to work. This time he worked for two days and had another spell. He was sent home and remained there until June 7th, when he again returned to work and stayed on the job until. June 17th, when he suffered another dizzy spell, fell and injured his left leg to such an extent that he was again taken to the Baptist Hospital, where he was treated by Dr. Neibergall and sent home. On June 30th, he was told by Dr. Neibergall that he should go back to work and on the 2d of July, he did so, but was unable to carry on for more than a few hours. Meanwhile compensation had been paid him at the rate of $20 per week, for five weeks, two weeks following the first accident, the last payment of which was made on April 22, 1943, and three weeks following the second accident, the last payment of which was made on July 14, 1943. Suit was filed on July 12, 1944.
It is the contention of the defendant that the two accidents are entirely disassociated and that suit should have been filed not later than one year from April 22, 1943, since it is contended that the present disability is due to the blow on the head that plaintiff received in the first accident on April 2, 1943. The injury to his leg is not claimed to have been a factor in his present disability or epilepsy.
The section of the compensation law relative to prescription reads as follows: "That in case of personal injury * * * all claims for payments shall be forever barred * * * unless within one year after the accident proceedings have been begun as provided in Section 17 and 18 of this Act. Where, however, such payments have been made in any case, said limitations shall not take effect until the expiration of one year from the time of making the last payment. Also, where the injury *Page 633 
does not result at the time of, or develop immediately after the accident, the limitations shall not take effect until the expiration of one year from the time the injury develops * * *." Act No. 20 of 1914, as amended by Act No. 29 of 1934.
[1] Plaintiff contends that he was not aware of the fact that he had epilepsy until October 5, 1944, when Dr. Maurer, one of the experts who testified in his behalf, informed him of the fact. However, it seems to us that his malady had sufficiently developed almost immediately after the accident to meet the requirements of the statute. While he did not know what to call it, he knew that he suffered from dizziness and fainting spells, fits or seizures. There is, therefore, no point to be made of the fact that his knowledge of the character of his ailment was not made known to him until much later. Hannafin v. Pelican Cracker Factory, La. App., 185 So. 479.
[2] The question of whether one year had elapsed from the receipt of the last payment of compensation before suit was brought is another matter. As we have pointed out the position of the defendant is that after the first accident the last payment of compensation was made on April 22, 1943, and that since the suit was not filed until July 12, 1944, more than one year had elapsed and plaintiff's claim had prescribed. Defendant resumed payment of compensation to the plaintiff after the second accident and the last payment was made on July 14, 1943.
The view which we take of the matter, and there can hardly be a difference of opinion, is that the second accident was caused by the first and that the payment of compensation on July 14, 1943, was for disability caused by the first accident. The plaintiff was endeavoring to cooperate with the defendant's physician and attempted to get back to work as soon as possible. He made several attempts to do so and suffered a recurrence of the dizzy spells, fainting spells, etc., due to the first accident, in one of which he suffered a leg injury. While he was being treated by Dr. Neibergall for the leg injury he was also given some medicine for the pains in his head which were due to the first accident. Had there been no first accident, no blow on the head, there would have been no dizzy spells, no fall and no leg injury, consequently, when the defendant paid plaintiff in July, 1943, which defendant contends was compensation for plaintiff's second accident, he was, in reality, being paid compensation because of disability caused by his first accident. Our conclusion is that the plea of prescription was properly overruled.
[3] Turning our attention to the question of the total disability of the plaintiff, we find Drs. Edward H. Maurer and John A. Colclough testifying as experts for the plaintiff. They stated that the symptoms described by Esthey indicate that he was suffering from epilepsy and that epilepsy can be caused by trauma and that they were of the opinion that the epilepsy with which Esthey was suffering was of the permanent type.
Dr. Neibergall, who was ill at the time of the trial, did not testify, although an agreement was entered into between counsel to the effect that his testimony would be taken by deposition.
Dr. C.G. Anderson, who examined Esthey on behalf of the defendant, did not testify, but a letter, written by him to defendant, was introduced in evidence. He was of the opinion that the injury suffered by plaintiff was of a "trivial nature". However, both Drs. Maurer and Colclough say that the plaintiff's injury was serious. In fact, they are of the opinion that plaintiff is practically unemployable because he constitutes a hazard to other employees as well as himself. To quote from Dr. Maurer, "he could fall, and break an arm or leg and probably have a skull fracture". When asked as to whether he was employable or not, Dr. Maurer replied: "Well, he can get a job; but when they find out he is an epileptic, he will be discharged right away. He can't work. Right now he might get a job, and they might put up with him, because he is a highly skilled worker; but they would not do it for long".
Dr. Colclough, when asked the same question, said: "His chance of employability is as good as anyone's, until someone finds out of his epilepsy — I should say until his employer finds it out".
The medical experts, Drs. Maurer and Colclough, were testifying two years after the accident.
There is uncontradicted evidence to the effect that, prior to the accident, Esthey, a young man twenty four years of age, was in good health. After leaving defendant's employment, he attempted to work at several other places, but was unable to continue *Page 634 
because of his having epileptic fits and, at the time of the trial, was unemployed.
Our conclusion is that the evidence justifies a holding to the effect that Esthey is totally disabled within the meaning of the compensation statute and the authorities interpreting it, consequently and
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.