George G. Stephenson, father of Louis Robert Stephenson, a minor, sues the defendants, McCook Bros. Funeral Home, Inc., and its compensation insurer, Travelers Insurance Co., for four hundred weeks' compensation at the rate of $16.25 per week, beginning in July, 1944, for the benefit of his said son. For cause of action, he alleges in original and supplemental petitions, that his said son was employed by the defendant, McCook Bros. Funeral Home, Inc., as a helper to an ambulance driver at a wage of $25 weekly; that in the early part of July, 1944, while so employed he was instructed by his superior to go with a driver, Billy Taylor, to the Schumpert Sanitarium in Shreveport to take a patient to his home on Tulsa street, Cedar Grove; that they placed the patient on a stretcher in the ambulance and carried him to his home; that they could not get the stretcher to the bed in the patient's home, and had to lift the patient off the stretcher and carry him to the bed; that in doing so his son sustained a bad strain or injury of some kind, and they had to replace the patient on the stretcher temporarily, but afterwards again picked him up and placed him on the bed, after which they returned to the employer's place of business and reported the occurrence to his superiors, but none of them paid any attention to him.
That from that time on, his son suffered severely from said cause and was hardly able to do any work, and began passing blood; that he went to see Dr. Harmon, but Dr. Harmon did not at that time examine him, but sent him to Dr. R.K. Womack, who examined him and treated him a few times, causing the passage of blood to cease, but not stopping the pains, all of which was made known to the employer, at the time.
That on September 3, 1944, his son resigned and thereafter sought and found occasional jobs of light work, and was finally inducted into the U.S. Navy, December 13, 1944, but was discharged on February 6, 1945, because of inability to perform his duties, and that he again sought and found occasional light jobs of work.
That finally on April 18, 1945, his son went to see Dr. Harmon again, and was then examined, and it was then found that he had developed a serious injury; that his spine had separated at the lower part, and the X-ray examination confirmed this and also revealed an ephysitis of the dorsal vertebrae; that Dr. Hilton was also called in and his son was placed in a cast for three weeks, after which he wore a specially made metal brace for some time, and still wears it at times; that his son is unable to do any work of a reasonable character. *Page 645 
In answer to a plea of vagueness he elaborated the allegations of the original petition, which had been met with a plea of prescription or peremption, and after the plea had been sustained, a further supplemental petition was filed, accompanied by a motion for a rehearing. In this last petition, he alleges that the reason the suit was not filed sooner, was that the accident suffered caused no outward manifestation of injury, and that his trouble was diagnosed by Dr. Womack as "chronic non-specific prostatitis", and he was treated for that trouble only, and the passage of blood stopped, but that he continued to suffer the same pain as before, and that he had no way of knowing of the spine injury until the examination by Dr. Harmon on April 18, 1945, which is less than one year prior to the filing of the suit.
Defendants relying on the provisions of Section 31 of Act No. 20 of 1914, as amended, by Act No. 29 of 1934, contend that the plea of prescription or peremption was correctly sustained. This section, as amended, reads as follows: "In case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties shall have agreed upon the payments to be made under this act or unless within one year after the accident proceedings have been begun as provided in Sections 17 and 18 of this Act. Where, however, such payments have been made in any case, said limitations shall not take effect until the expiration of one year from the time of making the last payment. Also, where the injury does not result at the time of, or develop immediately after the accident, the limitations shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the said proceedings have been begun within two years from the date of the accident."
Plaintiff contends that the injury did not develop until April 18, 1945, because it was only then that his son found out what his injury was; that is, the part of his body or bones that had actually been injured. However, the petition is replete with allegations of pain and suffering from the date of the accident to the time suit was filed.
Plaintiff in brief relies largely for support of his contention on the case of Guderian v. Sterling Sugar and Railway Co., Ltd., 151 La. 59, 91 So. 546, where the plea of prescription of one year was overruled. In that case the plaintiff who had already sustained the loss of one eye before the accident complained of, sustained an injury on January 9, 1919, which caused a gash over the left eye which required slight medical attention and did not cause him to lose any time from his work. In the early part of April, 1919, he observed dark spots before his eye and consulted a physician who did not connect these symptoms with his injury, and he returned to work. About April 23, he noticed his eyesight was failing and again consulted the same physician who sent him to a specialist in New Orleans, where it was determined in the early part of May, 1919, that he had completely lost the sight of the eye, and that it was caused by the blow over his eye. Suit in that case was filed on April 22, 1920, more than a year after he had received the blow, but less than a year after he sustained the loss of the eye. Plea of prescription was overruled in that case.
The difference in that case and the present one is that the injury did not manifest itself for some time after he had received the gash over the eye. In the present case, the allegations of the petition are conclusive that the injured employee suffered the pain and discomfort almost continuously from the time of the accident, and in view of that, it must be held that the accident and the injury occurred at the same time. Counsel argues in his brief that the injury was in the process of developing during this intervening time, and that it was only when Dr. Harmon examined him on April 18, 1945, that the injury actually manifested itself. It is true that the exact nature of the injury was discovered only at that time, but the injured employee knew, according to the allegations of his petition that he had sustained an injury. In fact, it is alleged that he had to leave the job he was on and look for jobs of light work, so that it can hardly be contended that he *Page 646 
did not know that he had been injured, though it is true that he did not know the exact nature of the injury. This according to what was said by Judge Westerfield in the case of Esthey v. Avondale Marine Ways, La. App., 25 So.2d 631, would not have the effect of tolling the statute.
Defendant has cited Arnold v. Solvay Process Co., 207 La. 8,20 So.2d 407; Anderson v. Champagne, La. App., 8 So.2d 373; and Esthey v. Avondale Marine Ways, La. App., 25 So.2d 631; also Trichell v. Stovall Drilling Co., Inc., La. App., 150 So. 869. These cases appear to us not to be applicable to the facts as alleged in plaintiff's petition in the instant case, and for that reason they are not discussed.
We have reached the conclusion in this case that the allegations of plaintiff's petition show that the accident and injury occurred at the same time, and nearly 21 months from the date of the accident having elapsed before suit was filed, the claim of the plaintiff comes too late.
For these reasons the judgment of the District Court sustaining plea of prescription or peremption is affirmed at the cost of the plaintiff in both courts.