Plaintiff was employed as a welder by the defendant, Steel Construction Company, which is engaged in building and constructing steel tanks. On July 3, 1947, he sustained an injury to his left ankle for which he was paid compensation at the rate he was entitled to from that date through December 2, 1947. He went back to work for the same employer and on August 25, 1948, he claims to have met with an accident in which he injured the same ankle and had to undergo an operation. The result was that he was left with a total disability for which he now seeks to recover compensation to the full extent allowed under the workmen's compensation statute, Act No. 20 of 1914, as amended in part by Act No. 175 of 1948, that is, the sum of $30 per week for the period of 400 weeks. He sues both his former employer and its workmen's compensation insurer.
The contention made on his behalf is that his disability results from both accidents and, conceding that he had recovered from the first accident of July 3, 1947, for which he received the compensation due him, his injury was nevertheless aggravated by the subsequent accident of August 25, 1948.
The defense is that plaintiff had entirely recovered from the accident of July 3, 1947, and he had in fact been paid all the compensation that was due him when he returned to work on his job. It is denied that he sustained any accident such as alleged by him on August 25, 1948 and, in the alternative, that if he did sustain an accident on that day which injured him in any way that he had entirely recovered from the effects of that accident if it was a disabling accident at all.
After trial of the case in the court below there was judgment in favor of the plaintiff granting him compensation for a period of 26 1/4 weeks at the rate of $30 per week, commencing August 25, 1948. The trial judge seems to have held that under the testimony, plaintiff had only 15 per cent partial permanent disability to his left leg and that is why he limited compensation to the period decreed in the judgment. The defendant took an appeal from the judgment as rendered to which appeal the plaintiff answered and asked that the judgment be amended by increasing the period of compensation to 400 weeks as for total and permanent disability.
It is not necessary to discuss at any length the original accident of July 3, 1947 as there is no dispute that plaintiff did then suffer a rather serious injury to his ankle for which he was paid compensation until he was discharged as being able to return to work. The injury consisted of a fracture of the tibia of the left leg which fracture extended into the ankle joint. Plaintiff testified that even after he went back to work his ankle bothered him; that he did not have full control over it. He claims that in the latter part of August, 1948, he met with another accident while walking across a 12 or 10 inch board. The board was muddy and wet and as he walked across it his foot slipped and hit the side of the board and he fell in a ditch of water. It was the inside part of the ankle of his left foot which hit the board. This is the accident which is denied by the defendants but plaintiff's testimony that he did have such an accident is not contradicted and it is corroborated by one of the men working on the job with him, by the name of Floyd S. Swartzbaugh. His ankle began to swell after this second accident and as it continued to get worse he was finally, about three weeks later, sent to a doctor by his employer. Under that testimony the trial judge came to the conclusion that plaintiff had sustained this second accident and we conclude that the proof is sufficient to so hold.
On October 5, 1948, plaintiff was operated on by Dr. Wilson Morris, who, according to the medical testimony, removed *Page 302 
a ganglion from the injured ankle. We are not sure what exactly is meant by a ganglion but as we understand, it is a sort of growth or tumor in or near a tendon and in this case it was probably binding the ankle. That is what caused the plaintiff to have pain. We think that probably this ganglion was produced as a result of the second accident when plaintiff struck his ankle in falling from that board but it is not unreasonable to assume also, under the testimony, that both that accident and the remaining results of the first accident produced it.
The operation performed by Dr. Morris was successful, as far as he could see, but left the plaintiff with a limitation to bend his ankle of more than 15 degrees. This doctor seems to be somewhat of the opinion that there may be an arthritic reaction, secondary to trauma, and that may be the cause of plaintiff's trouble.
Dr. Harry Snatic testified as a witness on behalf of the plaintiff. He was produced as an expert. In his opinion plaintiff's condition is one of traumatic arthritis resulting from the fracture of the tibia and that has left him with a limitation of extension of the left ankle, or the left foot, as he puts it, of 15 to 20 per cent.
The testimony reveals that plaintiff was employed in the capacity of foreman and his duties consisted in instructing other employees how to do their work and giving orders generally. His duties in this connection required him to do a lot of climbing, at times to heights as far as 40 feet from the ground. He testified that since his operation he hasn't done anything because of the pain he suffers in his ankle. As we understand the testimony of Dr. Snatic and Dr. Morris, who limit his disability from 15 to 20 per cent, they refer to a disability due to limitation of extension of the ankle principally but they are both of the opinion that with such a condition, which in their opinion, will remain with the plaintiff, he should not engage in any duties or employment which require climbing. Dr. Morris says that he could do bench work but as far as climbing, he would not recommend that type of work. That, in our opinion, is easy to understand because certainly with the limited motion in his ankle, it would be apt to give away on him at any time and if that would happen whilst he is in the act of climbing, he may have very serious results.
Several doctors testified on behalf of the defendant, among them being Dr. Ben Goldsmith, who attended plaintiff after the first accident, and really we don't find his testimony, nor that of the others, for that matter, to be at any great conflict with the testimony of the doctors who testified for the plaintiff. Dr. Goldsmith finds it entirely possible for even the original injury of July 3, 1947, to have possibly caused a limitation of motion. He thinks it would be impossible to draw the line between the original accident and any aggravation of the condition resulting from the second accident in determining which produced the disability that exists.
Dr. Stakely Hatchette had also examined the plaintiff prior to the second accident. In addition to the fracture of the tibia, he found that plaintiff had also suffered a chip fracture. His testimony is to the effect that any fracture extending to a joint, such as the ankle, would be much more likely to cause disability in a foot than one that did not. Dr. W. G. Fischer expressed the same opinion on that point.
The last doctor who testified for the defendants is Dr. C. V. Hatchette and it seems to be on his testimony that the defendants principally rely. He seems to be definitely of the opinion that there is no indication of arthritis in plaintiff's ankle joint, at this time and from appearances alone, the ankle should be as strong as it was before the injury was sustained. From those same appearances, there should be no limitation of motion in the ankle. He stated that in his opinion there is nothing to account for the plaintiff's pain and inability to use his ankle. The old fracture he had received was well healed and he found no reason except the plaintiff's own word for it that he was disabled. In that connection it is significant to note that in a report which this doctor had made to the *Page 303 
insurance company carrying the employer's compensation insurance, he had given an estimate of 5 per cent disability in the ankle. While testifying he explained that by saying that is very little disability and he allowed it in order "to cover any margin of error". He seems to be of the opinion that any danger involved by the plaintiff in climbing would be a danger produced more by fear of loss of his life by falling from a ladder or a scaffold than because of any injury he may have, and with respect to that opinion we would say that it is very significant, in considering the plaintiff's ability to carry on that part of his work which he is required to do, for, he says further, "If he is afraid of it I would recommend that he not go back". When we take this statement in connection with the testimony of those who testified on behalf of the plaintiff and that of the other doctors who testified for the defendants, to the effect that it might be a dangerous thing for this man to continue doing work which required climbing, we find that he is disabled within the meaning and the terms of the workmen's compensation statute because he can no longer do and perform all of the duties that are required by the nature of his employment.
This conclusion is supported by numerous decisions, one of which we believe to be so pertinent that we quote from it as follows: "Our appreciation of the testimony is that decidedly plaintiff cannot perform the numerous duties incident to the position of millwright or mill foreman in a sawmill. We need go no further than to refer to the very work he was doing at the time he was injured, which was in line with those duties, and then to the testimony of the doctors, even those who testified for the defendant, to satisfy ourselves on this point. That work took him up on a scaffold almost twenty feet high, and the testimony of all the doctors is to the effect that he could not do any climbing with safety." Ingram v. Meridian Lumber Co., La. App., 178 So. 187, 189.
Plaintiff is seeking compensation at the rate of $30 per week, the maximum provided for in the latest amendment to the compensation statute, Act No. 175 of 1948. That is the demand made in the prayer of his petition and it is based on his allegation that his present disability arose out of the accident of August 25, 1948, or that that accident aggravated a condition in his ankle that existed by reason of the accident of July 3, 1947. If the accident of August 25, 1948 is the cause of his disability his compensation has to be fixed at $30 per week as the amendment by Act No. 175 of 1948 was in effect on that date. Throughout his testimony however, plaintiff complained that his ankle never did get entirely well before the second accident in August, 1948. He repeats that he never ceased having pain and that he had no control over it. We are left with serious doubt, from the medical testimony, whether the limitation of motion which admittedly exists can be definitely attributed to either of the two accidents. Dr. Goldsmith's opinion that it is impossible to draw a line between the two in determining which produced the present disability, reflects our reaction to the testimony and from which we conclude that plaintiff's disability had its origin in the accident of July 3, 1947, at which time the maximum rate of weekly compensation under the statute was $20. No proof has been made of the medical expenses demanded.
For the reasons stated, the judgment appealed from is hereby set aside and it is now recast so as to read as follows:
It is ordered, adjudged and decreed that there be judgment in favor of the plaintiff, Ernest T. Rabitaille and against the defendants, Steel Construction Company and The Employers Liability Assurance Corporation jointly and in solido, awarding the said plaintiff workmen's compensation at the rate of $20.00 per week for a period not to exceed 400 weeks, beginning July 3, 1947, with legal interest on each weekly installment from date of maturity, less the amount of compensation already paid from July 3, 1947 through December 2, 1947, together with all costs of this proceeding. *Page 304