DORE, Judge.
This is an appeal from a judgment sustaining a plea of prescription or peremption to a demand of plaintiff for compensation at the rate of $20 per week, not to exceed four hundred weeks, allegedly due as a result of disabling injuries sustained by plaintiff in an accident which occurred in the course and scope of his employment on or about April 30, 1948. On the said day and date while carrying building materials, plaintiff slipped and fell on a flume, hitting tire said flume with his left knee.
Plaintiff alleges “that on or about October 27 or 28th of 1949, an injury developed from this accident which totally and permanently disables him from following the occupation in which he was engaged at the time of the accident, which injury did not result at the time of or develop immediately after the accident. * * *. That the disabling injury is described as a rupture of the bersae or bursae in the left knee, which said ruptured condition is a direct and proximate result of the accident of April 30, 1948, while in the employ of employer; ‡ if: >>
Plaintiff further alleges “that at the time of the accident, your, petitioner received a blow to his left knee, causing a condition for which he was opérated upon by Dr. C. V. Hatchette, and paid compensation up to approximately October 1, 1948; that the operation and removal of the semi-lunar cartilidge (cartilage) apparently produced a complete cure from this disabling condition; that, however, your petitioner’s present injury developed on October 27th or 28th of 1949, as a direct and proximate result of the accident on April 30, 1948, without previous warning, and that as a result of this injury, your petitioner is totally disabled from following the occupation in which he was engaged at the time of the accident.”
He filed his demand on December 13, 1949, making the Travelers Insurance Company, the compensation insurer of W. H. Patterson & Company, plaintiff’s- employer, defendant. Thereupon, defendant filed the plea of prescription or peremption, which plea was sustained by the trial judge, hence this appeal.
The trial judge, in his written opinion, based his judgment on the following cases, which he deemed most pertinent to the issue involved: Richard v. Blair, La.App., 20 So. 2d 577; Hannafin v. Pelican Cracker Factory, Inc., La.App., 185 So. 479; and Stephenson v. McCook Brothers Funeral Home, La.App., 27 So.2d 644.
*320 There is no question in this case of interruption of prescription, nor is there a question of fact which we must decide, because for the purposes of this plea, the allegations of the petition must be taken as true. The only question involved is whether plaintiff’s claim is barred by the prescriptive or peremptive provisions of the Workmen’s Compensation Act, Act No. 20 of 1914, the pertinent section of said Act being Section 31, as amended by Act 85 of 1926 and Act 29 of 1934, which reads as follows:
“In case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties shall have agreed upon the payments to be made under this act or unless within one year after the accident proceedings have been begun as provided in Sections 17 and 18 of this Act. Where, however, such payments have been made in any case, said limitations shall not take effect until the expiration of one year from the time of making the last payment. Also, where the'injury does not result at the time of, or develop immediately after the accident, the limitations shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the said proceedings have been begun within two years from the date of the accident.”
Both the plaintiff and defendant have submitted clear, well written briefs in which, they set forth what they consider to be the contention of the other and with criticism of the cases cited by each in support of his respective contention.
We feel that the contention of the plaintiff, as gathered from his pleadings and his brief, is that regardless of the fact that the accident of April 30, 1948 produced an immediate disabling injury to ’his left knee of such a degree that an operation thereon was necessary and performed, resulting in the removal of the semi-lunar cartilage of the said knee and apparently producing a complete cure of his disabling condition as of October 1, 1948, and was paid the maximum compensation to said date, since his present injury developed or manifested itself on October 27th or 28th of 1949, as a direct and proximate result of the accident on April 30, 1948, his claim therefor is saved by the last sentence of Section 31 quoted supra. In other words, plaintiff contends that the injury which manifested itself on October 27th or 28th of 1949, was in effect, a new injury arising out of the accident unrelated to the injury which immediately manifested itself necessitating an operation.
Plaintiff cites and relies upon the cases of Guderian v. Sterling Sugar & Ry. Co., Ltd., 151 La. 59, 91 So. 546; Carlino v. United States Fidelity & Guaranty Co., 196 La. 400, 199 So. 228, 229; Rabitaille v. Steel Tank Construction Co. et al., La.App., 42 So.2d 300; Kinder v. Lake Charles Harbor & Terminal District et al., La.App., 31 So.2d 498; Cook v. International Paper Company, La.App., 42 So.2d 558, and Anderson v. Champagne, 8 So.2d 373, in substantiation of his position.
In the Guderian case, the plaintiff suffered a gash over the left eye, which required slight medical attention, gave plaintiff no concern, and did not cause him any loss of time from his work. This was on January 9, 1919. In the early part of April, following, plaintiff observed dark spots before his eye. This at once alarmed him, and he immediately consulted a local physician, who informed him that the condition mentioned was due probably to a derangement of the kidneys or to indigestion. On April 23, 1919, he noticed his eyesight was failing, and immediately consulted the same physician, who advised him to consult a specialist. He acted on this advice, for on April 29, 1919, he was under treatment in the Touro Infirmary. The evidence disclosed that the blow over the left eye caused the detachment of the retina on the temporal, and that at sometime after April 23rd, perhaps in the early part of May, 1919, plaintiff, as a result, lost his eye completely, and, for the reason above stated, became totally blind. The suit was instituted on April 20, 1920. Hence, over a year elapsed between the blow and the institution of the suit, whereas, less than a year *321 intervened between the loss of the eye and the filing of the suit.
The defendant contended that prescription began to run from the time the blow (accident) was struck, whereas plaintiff contended that it commenced at the time of the loss (injury) of the eye. Section 31 of Act 20 of 1914, had not yet been amended. The peremptive or prescriptive period then required the claimant to file his proceedings “within one year after the injury.”
The Supreme Court held with the plaintiff, that is, that the prescription of one year did not run until he lost his eye, as his cause of action did not arise until that time.
It is to be noted at this time that a disabling injury did not immediately manifest itself as in the present case. In the present case, a disabling injury immediately manifested itself, necessitating an operation and plaintiff was paid compensation to October 1, 1948, at which time he was discharged as being apparently cured.
In the Carlino case, the plaintiff suffered an inguinal hernia on September 15, 1936, while in the course and scope of his employment, but he continued to work until February 25, 1937, when he submitted to an operation. He was discharged as cured by the surgeon and returned to work about May 22, 1937. He was paid compensation at the rate of 65 per cent of his weekly wages from February 27th to May 22, 1937. On the second day after he returned to work, about May 24, 1937, a small lump or swelling appeared at the place where the operation had been performed. He |gain consulted the physician and he was -told by the physician that there was a recurrence of the hernia and that another operation would be necessary. However, plaintiff continued in his effort to work and actually did the lighter part of it until August 1, 1937, when he suddenly suffered a complete rupture. The suit was filed on June 18, 1938. The main defense argued by the defendant was that the suit was barred by the prescription of one year, under Section 31 of the Employers’ Liability Act, as amended by Act 29 of 1934. Anent this plea the Supreme Court stated: “It is not necessary to decide whether the one-year term of prescription against a suit based upon the hernia which occurred on or about the 15th of September, 1936, went on while the employer was paying the injured employee his wages as a gratuity. It is sufficient to say that a suit for compensation for the disability resulting from the rupture which' occurred on- August 1, 1937, is not barred by prescription, because -the suit was filed on June 18, 1938.” [199 So. 233]
In fact, the Supreme Court would have fixed the compensation period from August 1, 1937 instead of February 25, 1937, if it had not been for the fact that such a fixing would result in allowing the plaintiff more than he had sued for.
In our opinion, the Court took the position that plaintiff had received two distinct injuries while in the employment of the same employer, and was entitled to-recover regardless of the fact that he previously sustained a compensable injury and was cured therefor.- In our case, the plaintiff does not contend that he received two accidents causing two compensable injuries at different times while in the employ of W. H. Patterson &. Co.; his contention, as we understand it, is that he received, two injuries arising out of the same accident, one of which immediately manifested itself for which an operation was performed and apparently cured, while the second injury did not manifest itself until October 27th or 28th of 1949. The Carlino case therefore is not of any help to us in determining the issue.
In the Rabitaille case, the plaintiff, on July 13, 1947, sustained an injury to his left ankle arising out of an accident on thát day, for which he was paid compensation at the rate he was entitled to from that date through December 2, 1947. He went back to work for the same employer and on August 25, 1948, he claimed to have met with another accident in which he injured the same ankle and had to undergo an operation. His contention was that his disability was the result of both accidents and, conceding that he had recovered from the first accident of July 3, 1947, his injury was nevertheless, aggravated by the subsequent accident of August 25, 1948. A mere reading of the case clearly Shows that the case was concerned only with the aggravation of a *322 previous injury. Nowhere in-the opinion is reference madq. to a plea of prescription being filed or considered by the Court. It is obvious, therefore, that the case is not pertinent to the case at bar.
In the Kinder case, the question at issue was whether the payment of medical expenses by the employer or employer’s insurer within one year preceding commencement of suit for-compensation interrupted or tolled the running of prescription or peremption. Obviously this case is not pertinent.
In the Cook case, plaintiff, while in the course of his employment with defendant, received an injury to his shoulder and foot as the result of an accident on July 23, 1946.: He alleged that recovery was complete from the shoulder injury but that his total disability from the injury to his foot had manifest itself first on December 20, 1947. He filed his suit on July 28, 1948, two years and five days after the accident. The suit was dismissed under the two-year prescriptive period.
Plaintiff’s able attorney states that “the Court indicated that suit could have been filed between December 20, 1947, and June (July) 23, 1948, a situation on all fours with the present case.” We find no such indication in reading the case. We do not find wherein this case is apposite to the case at bar.
In the Anderson case, plaintiff alleged that while engaged in the course and scope of his employment, he sustained an accident in 1936 or 1937 causing an injury to his left arm and that, thereafter, he continued to work arid experienced nothing more than a soreness and occasional pain in his left arm until some time towards the end of 1940, or the beginning of 1941; that a blood tumor finally developed on the injured arm which necessitated an operation in March, 1941. The suit was filed in January, 1942. The, Court held that the action was prescribed or perempted under the plain provision of Section 31, as amended in 1934. We fail to see wherein this case is pertinent to the case at ban
The defendant argues that the contention of the plaintiff is founded on a false premise. It contends that the only question presented to us is whether an employee who suffered a disabling injury of the left knee on April 30, 1948, the result of an-accident occurring that same day, and who was operated on for that injury and paid compensation until October 1, 1948, at which time he was apparently cured, may more than one year after payment of the last compensation benefit, bring suit under the compensation law for an alleged disability resulting from a recurrence of that injury. In other words, defendant contends that the condition in which plaintiff finds himself is a recurrence of the original injury which immediately manifested itself after the accident and not caused by a new injury as of date of October 27th or 28th, 1949. It cites and relies upon the cases followed by the trial court and the additional case of Jaume v. Maison Blanche Co., La.App., 193 So. 90S.
In the Hannafin case, the plaintiff was injured on April 8, 1936, when a falling' door struck her on her back near the base of her spine. In July of 1936, it was found that plaintiff was suffering from “lumbosacral sprain and right -and left sac-ro-iliac sprain and fracture, with displacement of the lower two segments of the coccyx.” [185 So. 481] The attending physician performed an operation upon the plaintiff, removing her coccyx and provided her with a brace for the relief of the “sacro-iliac and lumbosacral strain”. Plaintiff wore this brace to September 16, 1936, when she complained that it was uncomfortable and a sacro-iliac belt was substituted. The physician continued to treat the plaintiff until November 29, 1936, at which time he discharged the plaintiff as cured. Plaintiff was paid compensation until November 29, 1936. On May 5, 1937, plaintiff was advised by another doctor, after examination, that she was suffering from a sacro-iliac strain, and subsequently, on February 10, 1938, plaintiff brought suit against her employer for compensation benefits.
The Orleans Court of Appeal found that plaintiff “suffered more or less from the time of her injury (accident) up to the time of the filing of her suit and is, per *323 haps, still suffering, but we are also convinced that whatever might have been the cause of her suffering it was due either to the fractured coccyx^ bone or the sacroiliac strain, both of which injuries were manifest immediately after the accident. * * * Be that as it may, the section of the compensation law upon which the defense is based prohibits the bringing of a suit more than one year after the discovery of the disability due to the accident, in this case the sacro-iliac strain. Under the evidence in the record it cannot be said that the sacro-iliac strain did not manifest itself until within one year before the suit was filed.” It upheld the judgment of the lower court sustaining the plea of prescription or peremption. It is the contention of the defendant that a similar situation exists in the case at bar. We disagree with it. In the Hannafin case, as noted above, the Court found as‘ a fact that the evidence justified the conclusion that the injury, that is, the sacro-iliac strain, had immediately manifested itself, while in our case, the rupture of the bursae or bersae in the left knee did not develop or manifest itself before on or about October 27th or 28th of 1949, without any previous warning. Thus, in the Hannafin case, the plaintiff could have filed her suit within a year after her last compensation payment of November 29, 1936. She failed to do so, and consequently, her suit was barred. But in the present case, plaintiff could not have instituted any suit in the year following his last compensation payment of October 1, 1948, because he was not suffering from any disability or injury during that time. His cause of action only arose on October 27th or 28th, 1949, when the injury, the rupture of the bursae of the left knee, developed.
In the Richard case, involving a suit for an injury resulting from an accident of October 28, 1942, for which compensation was paid to December 22, 1942, this Court sustained a plea of prescription or peremption to the suit filed December 24, 1943, stating:
“The second contention of the plaintiff is based on the last sentence of Section 31 of the Compensation Law wherein it is provided that if the injury does not result at the time of, or develop immediately' after the accident; the limitation shall not take effect until after the expiration o'f one year from the time the injury develops, not however, more than two years from the date of the accident. This contention is clearly without merit as the injury in this case, according to plaintiffs -own petition, developed at the time of the accident or immediately thereafter. After describing the manner in which he was injured, plaintiff alleges that he became immediately sick and dizzy and suffered much pain; that he reported his injury to the officials of his employer and received medical treatment from his employer’s physician for about seven weeks, and received compensation for his injury.
“Plaintiff testified that the doctor who was treating him told him that he could go back to work; that about the middle of January, 1943, he tried to go back to work, but found that he was still disabled. He 'does not show that his employer misled him in any way as to his claim for further compensation. If he was disabled in January, 1943, this disability resulted from the same injury which developed at the time of the accident, and for which he was paid, the last compensation on December 22, 1942. He had a year from that date in which to determine the extent of any further disability resulting from the accident, but he failed to file his suit for further compensation within the statutory limit.” (Italics ours.) [20 So.2d 579]
Thus, we have again a situation wherein the injury developed or manifested itself at the time of the accident. Our remarks or distinction made in the Hannafin case to the case at bar equally apply to this case. Furthermore,' in that case, plaintiff did not contend that he was cured when discharged ; in the case at bar, plaintiff was discharged as cured on October 1, 1948, and remained so for a period of over a year; thus plaintiff’s disability which .developed on October 27th or 28th, 1949, cannot be said to be the result of the injury for which he was operated and is not a recurrence thereof.
In the Stephenson Case, plaintiff sued on behalf of his minor son for compensation. *324 It appears that in the early part of July, 1944, plaintiff’s minor son, while in the course and scope of his employment, suffered a bad strain or injury of some kind; from that time on, his son suffered- severely from said cause and was hardly able to do any work, and began passing blood. His son consulted Dr. Harmon, who diagnosed his case as “chronic non-specific prostati-tis”, [27 So.2d 645] and treated him a few times, causing the passage of blood to cease, but not stopping the pains. On September 3, 1944, his son resigned and thereafter sought and found occasional jobs of light work, and was finally inducted into the U. S. Navy, December 13, 1944, but was discharged-on February 6, 1945, because of inability to perform his duties, and he again sought and found occasional light, jobs. Finally, on April 8, 1945, his son again consulted Dr. Harmon, who then found that his son had developed a serious injury, that his spine had separated at the lower part, and the X-ray examination confirmed this and also revealed an ephysitis of the dorsal vertebrae. In order to circumvent the one year prescription, the suit having been filed twenty-one months after the date of the accident, the plaintiff alleged “that he had no way of, knowing of the spine injury until the examination, by Dr. Harmon on April 18, 1945, which is less than one year prior to the filing of the suit.”
In affirming the judgment of the District Court sustaining a plea of prescription or peremption, the Court-of Appeal, Second Circuit, said: “In the present case, the allegations of the petition are conclusive that the injured employee suffered the'pain and discomfort almost continuously -from the time of the accident, and in view of that, it must be held that the accident and the injury occurred at the same time. Counsel argues in his brief that the injury was in the process of developing during this intervening time, and that it was only when Dr. Harmon examined him on April 18, 1945, that the injury actually manifested itself. It is true that the exact nature of the injury was discovered only at that time, but the injured employee knew, according to the allegations of his petition1 that he hafl sustained an injury. In fact, it is alleged that he had to leave the job he was on and look for jobs of light work, so that it can hardly be contended that he did not know that he had been injured, though it is true that he did not know the exact nature of the injury. This according to what was said by Judge Westerfield in the case of Esthey v. Avondale Marine Ways, La. App., 25 So.2d 631, would not have the effect of tolling the statute.”
Thus, it is evident that we have a similar situation as in the cases of Hannafin and Richard, supra, that is, that the plaintiff was suffering a disabling injury continuously from the date of the accident to April 18, 1945, and thence on to the filing of the suit, and he -could have filed his suit within a year from the accident.
In the Jaume case, plaintiff was injured on March 9, 1937, while employed as a painter by defendant, when he fell from a ladder to the cement floor. He was sent by his employer to the Touro Infirmary, where he remained about four weeks in a more or less unconscious condition under the care of a physician engaged by his employer. After leaving the hospital, he was confined to his home until May 21, 1937, when he returned to his employment and continued working for about nine and one-half months, or until March 4, 1938, when he was sent home by his employer. Jaume testified that after he returned to his employment with defendant he did the same sort of work he was doing before, but that he was “full of pains”; nevertheless, he says he carried on in spite of the pains because he needed the money to support himself and his family. His pains, Jaume said, consisted of a continuous heada-che and dizziness from which he suffered when he attempted to mount his painter’s ladder. On June 13, 1938, one year and three months after the accident, plaintiff brought his suit claiming compensation. The suit was defended upon four grounds; however, the Orleans Court of Appeal considered only two grounds: “First, a plea of prescription or peremption based upon Section 31 of Act No. 20 of 1914, as amended by Section 1 of Act No. 29 of 1934; Fourth, that whatever conditions plaintiff was suf-‘that whatever conditions plaintiff was suf *325 fering from * * * was not result of the accident of March 9th, 1937’.” [193 So. 196] In affirming the judgment of the lower court dismissing plaintiff’s suit on the merits, the Orleans Court of Appeal stated:
“It is clear from this review of the medical testimony that Jaume had failed to prove that his present disability is due to the accident, but if it were otherwise and he had been able to show that the accident caused all his trouble, there is nothing to indicate that his present disability was the delayed result of his injury, of which he could have no knowledge, or ability to anticipate so as to prevent the running of prescription, or defer its starting point to such time as the result was made manifest.”
“Our conclusion * “* * is that prescription was not interrupted by any delayed effect of the accident so as to bring the plaintiff’s claim within the provisions of Section 31 of the Compensation Statute, as amended, and postpone the beginning of the prescriptive period of one year from the date of the accident to some later date fixed by the manifestation of latent injuries.”
This case is in the same category as the other three cases cited and relied upon by the defendant; that is, that in all four cases cited and relied upon by the defendant, plaintiff in each case had continuously suffered from the moment of the accident to the time of the filing of suit; while in the case at bar, plaintiff suffered two injuries arising out of the accident. One of the injuries immediately manifested itself, and was completely cured by October 1, 1948; he did not suffer with any disability for a period of more than a year thereafter. The other injury from which he is now suffering suddenly developed on October 27 or 28, 1949, as a direct and proximate result of the accident on April 30, 1948. He filed his suit on December 13, 1949, within the two years of the date of the accident. The plea of prescription should have been overruled.
For the reasons assigned, the judgment appealed from is hereby annulled, reversed and set aside. It is now ordered that the plea of prescription or peremption be and the same is hereby overruled, and the case is remanded to the District Court for the Parish of Evangeline for further proceedings; the costs of this appeal to be paid by the defendants, all other costs to await the final termination of the case.
FRUGE, Judge ad hoc, recused.