ELLIS, Justice
(dissenting)..
The plaintiff in this case was a structural steel worker when he suffered a crushing injury to his left leg above the knee'which, according to the medical testimony, has resulted in a 10% loss of function in his left leg which Dr. McVea regarded as permanent. It is established that the plaintiff has a 10% loss of flexion in the left leg, that is, he cannot bend his left leg against his thigh as 'well as he can his right leg! The left leg is one-half inch smaller than the right leg at equal points above the knee. As plaintiff was left-handed, the doctor stated that it would he anticipated that his left leg would he slightly larger than his right leg, ordinarily, and that the smallness of the left leg is attributed to atrophy of the muscles as a result of the injury.
Plaintiff, prior to the accident, had a congenital weakness of both knees in that they were not as stable as usually found on lateral motion of the leg on the thigh, and as a result of the accident this is more pronounced in the left leg, thus showing an aggravation of the congenital condition ,as the result of the accident. Also, as the result of an injury to a nerve, plaintiff has an area of diminished sensation or numbness on the anterior medial aspect of the left leg, which he testified was very bothersome.
One of the duties of a structural iron worker is that of being able to climb up and down and to handle and place steel at great heights. The plaintiff was a structural steel worker on the State Capitol building when it was constructed.
The question before the Court is whether the plaintiff, taking into1 account his injuries, can perform the duties of a structural steel worker or whether he is totally and permanently disabled from performing such duties.
Plaintiff testified that he suffered pain in his left leg and that he did not believe he could climb due to the weakened condition of his left leg and a lack of ability to flex the leg Ls-described. In other words, he had never attempted to climb because he'had a fear that his leg might give way.
Dr. McVea was asked the following question and gave the following answer:
“Q. Doctor, for a man who would have to climb at great heights and climb more or less with his knees like a monkey would this-sort .of loss of function seriously affect him in his climbing?
“A. I believe he would compensate for this loss of function and be able to climb, but that he would be aware that his left leg ivas not as strong as his right leg." (Emphasis added.)
Dr., Tanner, not having examined the plaintiff at the time of trial or within several months prior to the trial, did not feel that he was in a position to state whether plaintiff could return to work.
Dr. Sabatier estimated that the lower extremity was about 10% disabled but he was óf the' opinion that “the probability of return of muscle function, however, -can be expected with guided exercise.” He was also of the opiniomthat the numbness would be permanent “but I feel that the muscle weakness might well be overcome.” He testified positively that at the time of the trial the muscle weakness had not been overcome. He felt that plaintiff could climb “in. view of seeing other people who have comparable injuries engaged in that work.” He was asked the following question and in response gave the following answer:
“Q. You don’t feel that this would endanger other workers that might .be working with him at these great heights ?
“A. I feel that any man who climbs endangers the other workers, and I feel that any danger he might afford could easily be overcome with reasonable precaution.”
Thus, the medical testimony reveals that the plaintiff has a ¡permanent numbness as *716 a result of a nerve injury, a left knee, which, although unstable prior to the accident, was rendered more so as a result of the accident and with a loss of flexion, but that plaintiff could, in the doctor’s opinion, climb because “he would be aware that his left leg was not as strong as his right leg,” and as to any danger to any structural workers, the doctor felt “that any danger he might afford could easily be overcome with reasonable precaution.” It would appear to me that the doctor was saying that this man should not climb unless he kept in mind the weakness of his left leg and used extra precaution. In other words, the plaintiff is expected to keep his mind on his work and on his disabled leg at the same time so that he might not endanger his own life and the lives of other workmen.
The majority opinion attempted to distinguish the case of Robitaille v. Steel Tank Construction Co., La.App., 42 So.2d 300, 302, decided by this Court. In my opinion, the present case is much stronger than that case for the very simple reason that in the case cited the disability was found to be 15% to 20% due to limitation of extension of the ankle. This was the only physical disability that' the plaintiff had in that case, whereas in the present case we have a loss of flexion, a numbness or loss of sensation and an aggravated instability in the left knee. In the case cited, it is true that there was medical testimony to the effect that plaintiff should not climb, however, there was contrary medical testimony. In the Robitaille case, this court, in speaking of the doctors’ testimony who did not think that the plaintiff therein should climb, stated : “ * * * That, in our opinion, is easy to understand because certainly with the limited motion in his ankle, it would be apt to give away on him at any time and if that would happen whilst he is in the act of climbing, he may have very serious results.”
The above quoted statement from the .cited case applies equally in the present case. In the . present case, however, the disability is greater, and if we reached the conclusion in the Robitaille case that by reason of the limited motion in the claimant’s ankle that he was permanently and totally disabled because he could not climb with safety, I am of the opinion that we should have reached the same conclusion in this case. In the majority opinion it was stated that reference was made to the Rob-itaille case “to show that the employee in said case had medical reason and basis to think that he could not climb or to base his fear upon, whereas, we do not find that to be true in the case at bar.”
In my opinion, there was more medical reason for the plaintiff in the present case to think that he could not climb than in the case cited. One of his injuries and permanent disabilities was similar t.o the plaintiff’s in the Robitaille case, that is, loss of flexion, but, in addition, the unstable condition of both knees, the left being more unstable than the right as the result of the injury, and his loss of feeling in a certain portion of his left leg renders him more disabled to climb than Robitaille.
The doctors in the present case did not testify that plaintiff had fully recovered but that “with guided exercises” the weakness of the muscles of the left leg will be overcome, and “after he climbs a while” they believe the disability or weakness of the muscles will be overcome. No reference is made to lack of ability to flex the leg which, in my opinion, is necessary in climbing up and particularly in climbing down or squatting down or stooping in order to sit down, nor to the numbness or lack of feeling in a portion of the left leg.
In the record, also, is lay testimony by several other structural steel workers to the effect that anyone employed in that occupation must not be physically handicapped as is the plaintiff in this case. He might injure himself as well as a fellow worker.
For these reasons, I am of the opinion that plaintiff is totally and permanently disabled and should be awarded compensation for a period not exceeding 400 weeks.
I therefore respectfully dissent.