WATSON, Judge.
This is a workmen’s compensation case in which the trial court overruled an exception of prescription and awarded compensation for total and permanent disability. Plaintiff is Lou Anna Johnson Duplechain, who was working at farm labor for her father-in-law, Bertman Duplechain, one of the defendants. The other defendant is Lumberman’s Mutual Casualty Company, the employer’s workmen’s compensation insurer.
It is not disputed that in August, 1974 plaintiff was attempting to load a sack of soybeans, weighing about 60 pounds, when she experienced acute discomfort in her back. She was seen by a general practitioner, Dr. Wayne G. LaHaye, who treated her for a low back strain and hospitalized her from August 25 until September 3, 1974. Dr. LaHaye continued to follow Lou Anna’s condition and recommended on September 17, 1974 that she return to full activity with the exception of heavy lifting. Thereafter he saw her for other medical conditions relating to her gall bladder and not involved in the present litigation.
Lou Anna Duplechain was paid workmen’s compensation benefits by Lumberman’s in the amount of $26 per week through December 25, 1974 at which time payment of weekly benefits was discontinued. According to an exhibit in the record, Lumberman’s # 2, Lou Anna Duplechain deposited the last payment of weekly compensation on December 30, 1974 in her bank account.
Dr. LaHaye saw plaintiff on December 29, 1975, after she had bent over to pick up a toy and experienced severe pain in the lower back which rendered her unable to straighten up or to walk. This second episode of back trouble is the basis of the present litigation because plaintiff was diagnosed by Dr. LaHaye and Dr. F. Lionel Mayer, an orthopedic surgeon, as having a ruptured intervertebral disc. Dr. Mayer operated on Lou Anna Duplechain and found a protruding disc at the interverte-bral space between L-3 and L-4.
Suit was filed in the present proceedings on December 31, 1975, or one day after the *828 one year prescriptive period (LSA-R.S. 23:1209), following receipt of the last payment of compensation on December 30, 1974.
Defendants filed an exception of prescription which was heard but then referred to the merits. Following a trial on the merits, the trial court concluded that plaintiff was totally and permanently disabled as a result of the August, 1974 accident; that her claim had not prescribed because (a) the employer had made payments during the prescriptive year to plaintiff in lieu of compensation and (b) plaintiff continued to have symptoms;[1] and that plaintiff was entitled to compensation at the rate of $42.00 per week for 500 weeks from August 24, 1974 subject to credit for sums paid.
On appeal, counsel for the employer and the insurer specify that the trial court erred in concluding that the ruptured disc of December 29, 1975 was caused by the accident of August of 1974; in holding that the voluntary contributions by the employer to the plaintiff were wages in lieu of compensation which interrupted the running of prescription; and in fixing the daily rate of pay on the basis of a 6-day work week.

Connection Between Accident and Ruptured Disc

The defendants contend that plaintiff did not prove that the ruptured disc found by Dr. Mayer was caused by the accident of August, 1974 and that the trial judge erred in this particular. A review of the medical evidence and the lay testimony convinces us that the trial judge did not err. Dr. La-Haye, who was plaintiff’s attending physician, testified that in his opinion the ruptured disc was “probably related to the trauma” (TR. 74) of the accident. He described Lou Anna’s situation as a “. renewal of her previous back injury rather than a brand new injury.” (TR. 74).
Dr. Mayer, the operating physician, testified that if plaintiff did not have symptoms during the period between the accident and the episode of December, 1975, then it would be unlikely that there was a connection between the two, but, if the plaintiff had back pain during the 14 month interval, there was an increased probability that the two injuries were related. (TR. 90). The lay testimony in the record is to the effect that plaintiff indeed had symptoms during the period between her accident and the episode of December, 1975. Since the testimony reflects the presence of back symptoms, Dr. Mayer’s opinion would be that there was an increased probability that “. . . the two injuries are inter-related ...” (TR. 90).
Therefore, on the basis of the medical evidence and the lay testimony, it appears that there was no error in the trial judge’s conclusion that the ruptured disc was caused by the accident of August, 1974, and in addition it appears that the ruptured disc would constitute a re-manifestation of disability resulting from the same accident.

Later Manifestation of Injury

Under the circumstances, it is unnecessary to consider the second specification of error, having to do with payment of wages in lieu of compensation since under the well-recognized rule, plaintiff’s claim had not prescribed.
“The prescriptive period does not begin to run as to subsequent manifestations of disability until the date of the later manifestation, even though the disability manifested itself at some earlier time and the employee was paid benefits for a previous period of disability.” Payne v. Travelers Insurance Company, 299 So.2d 913, at 915 (La.App. 3 Cir. 1974).
See also Manuel v. Travelers Ins. Co., 46 So.2d 319 (La.App. 1 Cir. 1950) and Croswell v. Wells, 102 So.2d 794 (La.App. 2 Cir. 1958) writ denied.
The trial judge held correctly that plaintiff proved a sufficient connection between the accident of August, 1974 and the ruptured disc of December, 1975 to award compensation under the Workmen’s Compensation Act, and also, since the disc was a *829 later manifestation of the injury, her claim was not prescribed.

Compensation Rate

A serious issue is presented as to the compensation rate. Lumberman’s paid following the accident on the basis of a $40 weekly wage or $26 in weekly benefits. The trial court calculated plaintiff’s weekly rate by noting that the cash wages received by plaintiff were estimated as ranging from $8 to $10 to $12 per day; then concluding that $10 per day is “probably the correct amount” (TR. 17); then multiplying that by a six-day work week and adding an amount for plaintiff’s fringe benefits. The trial court found that the fringe benefits were worth about $100 per month but divided those by five because the household was composed of plaintiff, her husband (who also worked for Bertman Duplechain) and three children, concluding that Lou Anna was entitled to claim Vsth which would be $20 per month or $4.62 per week. Her weekly pay for compensation purposes was held to be $60 plus $4.62 or a total of $64.62. The judgment appealed from provided for weekly compensation benefits of $42.00.
The trial judge erred in concluding that plaintiff’s daily wage was $10 a day. A reading of the testimony of her employer, Bertman Duplechain, indicates that her cash wages were $8 a day. This is confirmed by the information he filed in the employer’s report of injury submitted to the insurance company.
The appellants contend that the present situation is controlled by LSA-R.S. 23:1021(11), as amended in 1968, relative to “Wages”.[2] This amended statute provides for a situation such as presented in the instant case, under subsection (d) which provides for wages paid on “other basis”. Since the only evidence as to Lou Anna Duplechain’s pay is her daily rate plus certain fringe benefits, it is appropriate under subsection (d) of the statute to apply a five-day week in determining her proper wages for compensation purposes. The fact that the record does not establish how many days she worked for employer is immaterial, because we have recognized a daily rate of $8.00 and subsection (d) provides for multiplication by five under all circumstances, putting into effect' a five day week for compensation purposes. Thus, she was receiving a basic wage of $8.00 for five days or $40.00 per week.
Plaintiff is entitled to a greater share of fringe benefits than given by the trial judge. She and her husband both worked for Bertman Duplechain and he gave them $100 per month in fringe benefits. Plaintiff is entitled to one-half of these (rather than one-fifth because the earnings are not attributable to the children) for wage purposes. This would be $50 per month or $11.54 per week.
Therefore, plaintiff was being paid $40 per week plus $11.54 per week in fringe benefits, giving her a total wage of $51.54 for compensation purposes. Her weekly compensation rate, 65% of her weekly wage, would be $33.50. The judgment of the trial court must be amended accordingly.
Therefore, for the reasons assigned, the judgment of the trial court is amended to fix plaintiff’s compensation rate at the sum *830 of $33.50 per week; otherwise the judgment is affirmed.
Costs of the appeal are taxed agamst Bertman Duplechain and Lumberman’s Mutual Casualty Company.
AMENDED AND AFFIRMED.

. The trial court’s reasons are not entirely clear

. LSA-R.S. 23:1021(11):
“(11) “Wages” means average weekly wage at the time of the accident. The average weekly wage shall be determined as follows: (a) If the employee is paid on an hourly basis, his hourly wage rate multiplied by the average actual hours worked in the four (4) full weeks preceding the date of the injury or 40 hours, whichever is greater; (b) If the employee is paid on a monthly basis, his monthly salary divided by 4; (c) If the employee is employed at an annual salary, his annual salary divided by 52; and (d) If the employee is employed on a unit, piecework, or other basis, his gross earnings from the employer for the 26-week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said 26-week period and multiplied by 5; provided, however, that if such an employee has worked for the employer for less than a 26-week period immediately preceding the accident, his gross earnings from the employer for the period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said period and multiplied by 5.”